**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DOUGLAS MINATEE, | : |
| Plaintiff, | Civil Action No. 10-4654 (JLL) |
| v. | **O P I N I O N** |
| SPECIAL TREATMENT UNIT et al., | : |
| Defendants. | : |

**Linares**, District Judge:

This matter comes before the Court upon Plaintiff Douglas Minatee's ("Minatee") filing of a civil complaint ("Complaint"), together with his application to proceed in this matter in forma pauperis, motion for appointment of pro bono counsel, and request for preliminary injunctive relief ("Request"). See Docket Entry Nos. 1-3.

For the reasons detailed below, the Court will grant Minatee in forma pauperis status pursuant to 28 U.S.C. § 1915, and will dismiss Minatee's claims against Defendants S.T.U., Maine, and Dow, with prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B). Minatee's claims relating to events that transpired prior to September 10, 2008 will also be dismissed with prejudice for failure to state a claim upon which relief can be

granted pursuant to 28 U.S.C. § 1915(e)(2)(B). Minatee's equal protection and due process claims against Defendants Kireev and Paolillo, to the extent the claims involve individual action, will be dismissed without prejudice with leave to amend. All remaining claims will be similarly dismissed for failure to state a claim upon which there is a plausible right to relief.[1] Minatee's motion for preliminary injunctive relief will also be denied and, as a result, Minatee's motion for the appointment of pro bono counsel will be denied as moot.

## I.  BACKGROUND

Minatee has been a party to numerous civil actions commenced in this District; some of these actions appear relevant either to the substance of Minatee's claims at bar or to the mode of litigation adopted by Minatee.[2]

### A.  Minatee's Habeas Challenges Asserted in 2005

On August 13, 2005, Minatee initiated a § 2254 habeas action in this District. See Minatee v. State of New Jersey ("Minatee-KSH"), Civil Action No. 05-4174 (KSH) (D.N.J.). Judge Katharine S. Hayden ("Judge Hayden"), presiding over Minatee-KSH, dismissed Minatee's challenges as unexhausted, expressly detailing the rationale and requirements of exhaustion.

### B.  Minatee's Subscription to Quasi-Class Challenges Asserted in 2009

On October 19, 2010, the Clerk received a civil complaint docketed in Oliver v. Dept. of Human Serv., Special Treatment Unit ("Oliver"), Civil Action No. 09-5336 (JLL) (D.N.J.). That civil complaint was executed on behalf of a putative class consisting of civilly committed individuals

---

[1] The Court will address all claims that Minatee clearly asserts, but it is not entirely certain whether he is attempting to assert additional claims.

[2] The Court's overview of Minatee's prior cases in this District is not exhaustive, since Minatee has been a party to a number of actions in this District.

("SVPs") held pursuant to the Sexually Violent Predator Act ("SVPA"); these individuals were housed at the Special Treatment Unit ("S.T.U."), in Avenel, New Jersey. The draftor of that complaint, SVP Lorenzo Oliver ("Oliver"), made assertions on behalf of all other signatories of the complaint, including Minatee. Referring to Minatee, Oliver asserted "[o]n August 13, 2005, . . . Minatee filed a habeas corpus petition in federal court. [Oliver claims that Minatee's] petition was dismissed as time-barred." Docket Entry No. 2, at 3-7 (original footnotes and citations to docket entries omitted). Although the assertion made by Oliver was facially untrue, Minatee affixed his signature to Oliver's putative class complaint averring, under penalty of perjury, to the truthfulness of Oliver's allegations.[3]

### C. Minatee's Habeas Challenges Asserted in 2010

On February 17, 2010, Minatee initiated another § 2254 habeas action in which he challenged Superior Court of New Jersey Judge Peretti's order suspending him from a state furlough program. See Minatee v. Department of Corrections, Civil Action No. 10-0770 (PGS) (D.N.J. 2010). Judge Peter G. Sheridan ("Judge Sheridan"), presiding over the case, dismissed Minatee's due process claims and declined to re-characterize the application as a civil complaint, finding that it would be futile. Id. Notably, as the court there detailed, Minatee participated in a state furlough program during which state officials discovered that the cousin with whom Minatee was staying during the furloughs "had a criminal conviction (or a charge and ensuing investigation)" based on sexual misconduct. Id. at 3. State officials were particularly concerned in light of Minatee's status as a sexual predator and undertook an investigation with state-retained psychiatrists, the status of which was unclear from the face of the complaint. Id. at 3-4.

---

[3] Minatee's habeas petition was dismissed without prejudice as unexausted rather than dismissed with prejudice as time-barred.

3

## II. SUBMISSIONS AT BAR

### A. Minatee's Complaint[4]

Just as Minatee's pleadings submitted in the above-detailed prior actions, Minatee's instant Complaint is of less than exemplar clarity. Minatee lists the following defendants, who he asserts have acted "under color of state law at all times:" (1) the Director of S.T.U., Dr. Merrel Maine, Phd., who is "responsible over daily operations of STU's, (DHS) Treatment Staff; (2) Attorney General for the State of New Jersey, Paula Dow, who "is responsible for submitting names of prisoners for civil commitment to the courts"; (3) Julia Kireev, a therapist and a member of the Treatment Progress Review Committee, responsible for planning treatments and recommending release from S.T.U; (4) L. Flatley, a therapist and a member of the Treatment Progress Review Committee, also responsible for planning treatment and recommending release from S.T.U; and (5) Nicole Paolillo, a clinical psychologist and member of the treatment team at S.T.U., whose responsibility is to "supervise and advise the treatment of residents at S.T.U. and their recommendation for release." Docket Entry No. 1, ¶¶ 4-9.

Minatee purports to bring three causes of action. First, Minatee claims the Defendants deprived him "Equal Treatment under the Law" because other civilly committed individuals have been administratively discharged without petitioning the court, whereas Minatee has not, despite

---

[4] The Complaint states that Oliver, the individual who was made misrepresentations to Judge Hayden discussed above, was "on the brief." The Court, therefore, takes this opportunity to stress that the legal determinations made on the basis of pleadings submitted in Minatee's name would necessarily affect Minatee's rights, rather than the rights of other individuals, e.g., Oliver. The Court, therefore, urges Minatee to make sure that all pleading submitted in his name duly reflect the facts and challenges that Minatee himself wishes to assert. See e.g. Williams v. Doe, No. 07-5395 (SRC), 2008 U.S. Dist. LEXIS 1211, at *20 (D.N.J. Jan. 7, 2008) ("the court should be mindful of the fact that it is all too easy for one inmate with some purported knowledge of the law to persuade others to [sign] a complaint") (citation omitted); see also Haines v. Jack Does 1-40, No. 07-5382 (SRC), 2008 U.S. Dist. LEXIS 1903, at *24 (D.N.J. Jan. 9, 2008) ("this Court expresses its grave concern about the possibility that [the] instant litigation is being hijacked by [another] plaintiff").

4

alleged findings that he is "no longer likely to commit sexually violent offenses if conditionally released." Id. at ¶¶ 1 and 29. Second, Minatee alleges the Defendants deprived him of his Due Process rights, the ADA of 1990, and the Rehabilitation Act because they failed to place him in a community-based setting after finding that he was no longer likely to commit a sexually violent offense. Id. at ¶ 30. Third, Minatee charges that "[t]he Attorney General Office of New Jersey deliberately acted in different [sic] to Plaintiff's liberty interest by seeking and causing the plaintiff to be civilly committed with full knowledge that Plaintiff did not meet the Constitutional requirements of being a Highly Dangerous Sex Offender; there by [sic] depriving him of his constitutional right to liberty, Double Jeopardy and the due process clause." Id. at ¶¶ 1 and 31.

The underlying facts appear to be as follows. On January 15, 1993, Minatee pled guilty to aggravated sexual assault and was sentenced to serve ten years at the Adult Diagnostic and Treatment Center soon thereafter. On November 4, 1999, Minatee completed his sentence.

However, Minatee was civilly committed pursuant to the New Jersey SVPA at a hearing on November 4, 1999. Minatee provides, "[t]he Office of the Attorney General of New Jersey filed motion in the Superior Court of New Jersey to [c]ivilly [c]ommit him. In Minitee's [sic] temporarily commitment report, Dr. Lawrence Siegd described him as a probable pedophilia." Id. at ¶ 11. At the hearing, an individual solely referred to as "Dr. Franks" testified that he had "diagnostic difficulties in evaluating Minatee because he had no history of sexual assault other then [sic] this recent case." Id. at ¶ 13.

Minatee submits, however, that as per civil commitment evaluations, he was "at the lowest moderate range of psychopathic disturbance" and in the "low risk category range to recommit a sexual offense." Id. at ¶ 14. In addition, a man identified solely as "Dr. Pual F. Fulford" allegedly

submitted a clinical psychological evaluation to the court on December 3, 2000, in which he stated that civil commitment was inappropriate due to Minatee's "lack of sex offender history and the repetitive and compulsive classification of him by A.D.T.C. was erroneous," however, Minatee does not define the term "A.D.T.C." Id. at ¶ 15.

With regard to Minatee's "unequal treatment and liberty interest," he provides as follows. On Aril 26, 2006, the "S.T.U. Annex Treatment Team" issued a "transitional report," in which they stated that "Minatee has a fundamental understanding of the offence [sic] cycle and recommended that he begin a gradual transition of reintegration back into the community." Id. at ¶ 16. Minatee successfully completed a variety of "treatment modules" and eventually graduated to Phase Five, "the highest achievement in S.T.U. treatment program." Id. at ¶ 18. On May 24, 2007, state court Judge Perretti, mentioned above, allowed Minatee to begin taking furloughs. However, despite the alleged fact that other housing options were under consideration, Minatee began staying with his cousin, "Mr. Ali" during furloughs. Minatee's Complaint states that the "state's probation department and the Department of Corrections had the responsibility of investigating Minatee's cousin and doing a back ground [sic] check on him prior to allowing Minatee to being his furloughs. Minatee was allowed to go on two furloughs." Id. at ¶ 22.

Upon discovering that Mr. Ali was a registered sex offender, the state allegedly filed a motion to alter Minatee's release plan in the Superior Court of New Jersey on account of Minatee's failure to divulge that fact. Id. at ¶ 23. As result, Judge Perretti suspended Minatee's furloughs and "the [S]tate informed the court that S.T.U. would explore alternative placement." Id. at ¶ 25.

The Complaint next asserts that on August 6, 2009, two members of the S.T.U. treatment team, Nicole Paolillo and Julia Kireev, prevented Plaintiff's release from S.T.U. by "constantly

denying any suggested placement center for the plaintiff's release." Id. at ¶ 26. Minatee further provides as follows: "The State of New Jersey's Sexual Violent Predator Act delayed the release of the Plaintiff by making him wait until his annual yearly review hearing before he could be released. After he had been found to be eligible. The Department of Human Services treated Minatee unequally by not directly releasing him through state agency process, like other civilly committed persons in the state." Id. at ¶¶ 27-28.

Minatee requests various forms of relief including, but not limited to: 1) monetary damages "for the harm he has and will continue to suffer" as result of Defendants' actions; 2) injunctive relief that would enjoin Defendants "from continuing the unconstitutional and illegal acts conditions and practices described in the complaint;" 3) numerous declaratory judgments[5]; and 4) attorney's fees. Id. ¶¶ 33-35. Notably, Minatee concedes that he has "no adequate remedy at law to redress the wrong set forth in this complaint."[6] Id. at ¶ 32.

### B. Subsequent Filings

Minatee additionally requests the appointment of *pro bono* counsel, see Docket Entry No. 2, and seeks preliminary injunctive relief (the "Request"), see Docket Entry No. 3, 1. The Request asserted an additional set of facts to be discussed below. See generally Docket Entry No. 3-2. Specifically, the Request asserted that, just two months after Minatee's filing of his Complaint at bar, Superior Court of New Jersey Judge Freedman, ordered the conditional

---

[5] Minatee specifically requests declaratory judgments stating that: 1) the New Jersey SVPA is "unconstitutional and denies the plaintiff Equal Treatment under the Law"; 2) the Defendants "violated the American with Disabilities Act of 1990"; and 3) the Defendants "deprived plaintiff of his Constitutional right to Liberty and Due Process." See id. at ¶¶ 33.
[6] In a subsequent filing with the Court, Minatee directly requests a preliminary injunction "ordering the defendants to create a [sic] integrated community based treatment facility, (Half-Way House) or to find such a facility to immediately place the plaintiff in a [sic] out-patient facility by a fixed date to be set by the court." Docket Entry No. 3, 1.

discharge of Minatee from the S.T.U.; according to the Request, Judge Freedman approved Minatee's post-discharge residence with his cousin and his cousin's wife,[7] and Minatee was duly released into that residence on November 3, 2010. See id. at 3. The Request also asserts that Minatee's residence with his cousin lasted only three days, since the cousin's landlady allegedly refused to add Minatee to the lease held by his cousin and the wife. See id.

According to the Request, Minatee left his cousin's residence immediately and moved into a boarding house; however, since the move allegedly took place during a weekend, the Request asserts that Minatee was unable to notify the S.T.U. officials of his change of address, as he was required under the terms of his release. See id. Allegedly, due to this failure to notify the S.T.U. officials about his change of address, Minatee was temporary recommitted back to the S.T.U.[8] The Request also states that Minatee had two re-commitment hearings before Judge Freedman on November 18, 2010, and on December 22, 2010; these hearings produced Judge Freedman's order(s) continuing Minatee's temporary re-commitment to the S.T.U. and directing the S.T.U. to find or create a suitable "class C" boarding house or a residential facility providing the around-the-clock supervision Minatee required. See id.[9]

Minatee's Request further asserts that, on February 22, 2011, Ms. Canette, an S.T.U. Program Coordinator, offered a certain boarding house ("Boarding House") for Minatee's consideration, and obtained Minatee's agreement to move to that Boarding House. See id. at 4. Minatee was interviewed by the Boarding House holder on March 18, 2011. Id. However,

---

[7] The Request names "Mutakabir and Shirley Ali." "Mutakabir" is likely the same cousin, who is also a registered sex offender, that Minatee refers to in his Complaint as "Mr. Ali." Docket Entry No. 3-2, 3.

[8] The Request is silent as to whether Minatee notified the S.T.U. officials of his new address on the Monday following his move. See Docket Entry No. 3-2, 3.

[9] The nature and extent of the proceedings before Judge Freedman are unclear from Minatee's filings.

8

according to the allegations stated in the Request, a certain Ms. Mangum informed Minatee that the Boarding House either did not submit a formal response regarding its willingness to accept Minatee as a resident or, in alternative, unnamed S.T.U. officials opposed Minatee's transfer to the Boarding House on the grounds that Minatee required a higher level of supervision than that available at the Boarding House. Id.

Minatee, therefore, seeks this Court's order directing the S.T.U. to either immediately locate or to immediately build a suitable facility into which Minatee could be released. Docket Entry No. 3, 1.

### III. STANDARD OF REVIEW

After a court makes a decision that a plaintiff is qualified to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, the court must then "screen" the complaint to determine whether the plaintiff's complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2)(B). In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name. Byrne v. Cleveland Clinic, 684 F. Supp. 2d 641, 648 (E.D.Pa. 2010).

It is well established that a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d

9

Cir. 1997). However, while a court will accept well-pled allegations as true, it will not credit bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Id. The Third Circuit has traditionally construed *pro se* litigants' complaints liberally and in their favor, all parties must nonetheless follow the Federal Rules of Civil Procedure. Byrne, 684 F. Supp. 2d at 648.

Under Fed. R. Civ. P. 8(a), a complaint must set forth: 1) "a short and plain statement of the grounds upon which the court's jurisdiction depends," and 2) "a short and a plain statement of the claim showing that the pleader is entitled to relief." From the pleading, the Court must be able to draw a reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A pro se complaint may be dismissed for failure to state a claim upon which relief may be granted if the allegations set forth by the plaintiff cannot be construed to supply facts in support of a claim entitling the plaintiff to relief. See Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

While the Third Circuit has adopted a liberal approach to the amendment of pleadings, leave to amend a complaint should not be permitted if it would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)(citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997))(internal quotations omitted).

10

IV.     **LEGAL DISCUSSION**

In light of Minatee's *pro se* status, the Court will construe the sufficiency of his submissions liberally. Haines, 404 U.S. at 520-21. While Minatee did not explicitly cite the federal statute under which he attempts to bring his Complaint, Minatee appears to be asserting a 42 U.S.C. § 1983 claim against all named Defendants.[10] The Court notes that Minatee, in his Request, subsequently stated that he is, in fact, asserting a § 1983 claim. See Docket Entry No. 3-2, 1 ("This is a Title 42, section 1983 Civil Rights complaint").

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Therefore, to state a claim for relief under § 1983, a plaintiff must allege two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### A. Minatee's § 1983 Claims Are Invalid as to Certain Defendants

Minatee's claims against the S.T.U., Dow, Maine, and Paolillo are, facially, subject to dismissal. The S.T.U. is a facility operated by the New Jersey Department of Corrections ("DOC") and is designated for SVPs, pursuant to N.J. Stat. Ann. § 30:4-27.34. However, the S.T.U. is not a

---

[10] The Court must be prepared to apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name. Byrne v. Cleveland Clinic, 684 F. Supp. 2d 641, 648 (E.D.Pa. 2010).

11

"person" within the meaning of a § 1983 suit. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (a confinement facility is not an entity cognizable as "person" for the purposes of a § 1983 suit); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); see Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994); see also Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (E.D. Pa. 1976). Therefore, any attempt by Minatee to recover against Defendant S.T.U. and the DOC must be denied. As a result, Minatee's claims against the S.T.U. and the DOC will be dismissed with prejudice, as amendment would be futile. Simmons v. New Jersey, No. 09-1067 (JAP), 2010 WL 5285353, *7 (D.N.J. Dec. 17, 2010) (finding amendment would be futile where the *pro se* prisoner sought to assert claims against the New Jersey DOC).

Analogously, since Minatee's Complaint stated, in no ambiguous terms, that his claims against Defendants Dow, Maine, and Paolillo were based not on the acts these Defendants actually undertook but solely on their supervisory capacities, Minatee's claims against these Defendants are subject to dismissal.

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* . . . . [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution. . . . [P]urpose rather than knowledge is required to impose [constitutional] liability on . . . an official charged with violations arising from his or her superintendent responsibilities."

Iqbal, 129 S. Ct. at 1948-49. Thus, Minatee's claims against Defendants Dow, Maine, and Paolillo, which allege a *respondeat superior* theory of liability, are impermissible and must be denied with prejudice, as amendment would be futile. See Forsythe v. Borough of E. Washington, No. 10-cv-

12

1770, 2011 WL 1105621, at *4 (W.D. Pa. Mar. 23, 2011) (finding amendment would be futile where Plaintiff attempted to recover from Defendant under a *respondeat superior* theory of liability).[11] The foregoing analysis leaves only Minatee's claims against Flatley and Kireev remaining.

### B. Certain § 1983 Claims Are Time Barred

Short of one challenge, all of Minatee's claims are based on events that occurred between November 1999 and September 2007. See generally Docket Entry No. 1, ¶¶ 11-25. Therefore, to the extent Minatee's claims can be construed as based on the events falling within this time period, such claims are necessarily time-barred.

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Minatee's claims. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. See Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987). "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace v. Kato, 549 U.S. 384 (2007) (emphasis removed). A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action." Sandutch

---

[11] To the extent that the Complaint can be construed as asserting claims against the individual prosecutors who participated in the case, amendment would be futile as well due to prosecutorial immunity. Imbler v. Pachtman, 424 U.S. 409, 410 (1976) ("a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983); Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

13

v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982); see also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). "[Plaintiff's] actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Fassnacht v. United States, 1996 U.S. Dist. LEXIS 1163 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386)

Here, Minatee's Complaint is dated as of September 9, 2010. See Docket Entry No. 1, at 9.[12] Consequently, for the purposes of the proceedings at bar, all of Minatee's claims pertaining to the events that took place prior to September 10, 2008, which is exactly two years prior to the date of the Complaint, are subject to dismissal, as untimely.

Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application. See Wilson, 471 U.S. at 269. While New Jersey law permits "equitable tolling," where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, see Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted), cert. denied, 172 N.J. 178 (2002), "the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."[13] Id. Minatee alleges no facts that would warrant equitable tolling.

---

[12] This is so even if the Court were to factor in the "prisoner's mailbox rule," pursuant to which a prisoner's submission is deemed "filed" as of the very date when the prisoner hand-delivers the submission to his/her prison officials for mailing to the court. See Burns v. Morton, 134 F.3d 109, 112 (3d Cir. 1998); see also Houston v. Lack, 487 U.S. 266 (1988).

[13] The record of Minatee's multiple actions instituted in this District, specifically the actions detailed by the Court at the outset of this Opinion, establishes, with utmost clarity, Minatee's ability to initiate any legal action he desired. Therefore, the Court has no basis to apply equitable tolling to Minatee's Complaint.

14

Correspondingly, the Court is constrained to dismiss all of Minatee's challenges except for his allegation that, "[o]n August 6, 2009 Defendant[s] Nicole Paolillo, . . . and Julia Kireev . . . stopped [Minatee] from being released from S.T.U. by constantly denying any suggested placement center for [Minatee's] release." Docket Entry No. 1, at ¶ 26. As previously explained, to the extent that Minatee's claims against Paolillo are based solely on the theory of respondeat superior, those claims are facially invalid. Thus, the only remaining claims are against Kireev, since this claim does not appear facially untimely and ensues from allegations suggesting Kireev's personal involvement in the alleged wrongs, and Paolillo to the extent that she had any personal involvement beyond a supervisory role.

### C. Minatee Fails to State a Claim upon which Relief may be Granted

#### 1. Equal Protection Claim

Minatee claims that "other civilly committed persons" were automatically released, while Minatee remained in confinement "waiting for court order," depriving him of his "Constitutional right to Equal Treatment under the Law." Id. at ¶¶ 28-29. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly situated be treated alike. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); see also Vacco v. Quill, 521 U.S. 793, 799 (1997). "'The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification. See, e.g., Bakke v. California Bd. of Regents, 438 U.S. 265, 291 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something

15

else when applied to a person of another color" and "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination"). However, "[i]f a legislative classification or distinction 'neither burdens a fundamental right nor targets a suspect class, we will uphold it so long as it bears a rational relation to some legitimate end." Vacco v. Quill, 521 U.S. 793, 799 (1997) (quoting Romer v. Evans, 517 U.S. 620, 631 (1996)). Further, while "[t]he Fourteenth Amendment's promise that no person shall be denied equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons," to be constitutional, distinctions must be able to withstand rational basis review and cannot be based solely on animus. Romer v. Evans, 517 U.S. 620, 631, 635 (1996).

When a plaintiff claims that his rights under the Equal Protection Clause have been violated, as here, simply on the basis of being treated differently from others similarly situated, he is asserting a claim under a "class of one" theory. See Hill v. Borough of Kutztwon, 455 F.3d 225, 239 (3d Cir. 2006); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). Under this theory, a plaintiff states a claim for violation of the Equal Protection clause only if he alleges facts showing "that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See Hill, 455 F.3d at 239 (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Consequently, to state a claim under this theory, the plaintiff, at the very least, must allege facts showing that: (a) the defendant treated him differently from others similarly situated; (b) the defendant did so intentionally; and (c) there was no rational basis for the difference in treatment. See id.

16

Here, Minatee fails to allege facts to indicate that the released SVPs were similarly situated to him, as required to state a "class of one" theory of unequal protection. Hill, 455 F.3d at 239. Indeed, the Complaint clarifies that each SVP was released on the basis of an individualized psychiatric evaluation, but Minatee fails to allege facts that qualify him as similarly situated. Therefore, Minatee's claim must fail as he did not allege the existence of similarly situated individuals. See id. (finding plaintiff's equal protection claim failed because of his failure to allege the existence of similarly situated individuals). Moreover, the Court need not credit Minatee's conclusory statements, absent specific, alleged facts to sufficiently support his claim. Morse, 132 F.3d at 906. As a result, the Court finds that Minatee has failed to raise a right to relief to a sufficient level of plausibility, as required under Fed. R. Civ. P. 8(a). Thus, his unequal protection claim must be dismissed without prejudice with leave to amend in order to cure the deficiency discussed above as to the only remaining viable defendants, Defendants Kireev and Paolillo to the extent Plaintiff alleges that Paolillo took individual action and was not merely a supervisor.

### 2. Due Process Rights Claim

As this Court noted, Minatee's claims against Kireev that are not facially time-barred ensue from his assertion that, "[o]n August 6, 2009 [Kireev, an STU therapist] stopped [Minatee] from being released from S.T.U. by constantly denying any suggested placement center for [Minatee's] release." Docket Entry No. 1, at ¶ 26. The best this Court can surmise is that Minatee believes that Kireev violated his rights by entering her opinion that the locales he had proposed were insufficient to provide him with the level of supervision Kireev believed Minatee required.[14]

---

[14] Although, as noted above, claims against Defendant Paolillo fail because they are brought against her based on her role as a supervisor, to the extent the Complaint can be construed as against Defendant Paolillo individually, the claims fail for the same reasons as those against Kireev.

Minatee's challenges to that effect are without merit. In <u>Williams v. Fed. Bureau of Prisons</u>, 85 Fed. App'x 299 (3d Cir. 2004), the Court of Appeals cautiously acknowledged the potential validity of the conclusion reached by the Fourth Circuit in <u>Paine v. Baker</u>, 595 F.2d 197 (4th Cir. 1979). <u>See</u> <u>Williams</u>, 85 Fed. App'x at 303 (expressly questioning precedential value of <u>Paine</u> by citing <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 308-09 n. 13 (5th Cir. 1997)). In <u>Paine</u>, the Fourth Circuit announced that, in limited circumstances, inmates might have a due process right to not have "prejudicial erroneous information" on their files. <u>See</u> <u>Paine</u>, 595 F.2d at 202. However, even under <u>Paine</u>, the inmate must allege that the information in his file is false, but such falsity cannot be established if "the inmate disputes evaluations and opinions regarding him" because "[t]he federal courts will not oversee the discretionary decisions of . . . administrators and second-guess their evaluations." <u>Id.</u> at 201 (citing <u>Williams v. Ward</u>, 556 F.2d 1143 (2d Cir.), <u>cert. dismissed</u>, 434 U.S. 944 (1977) (dismissing a claim based on inmate's disagreement with some of his psychiatric evaluations)).

Here, Minatee's due process claim against Defendant Kireev is limited to his assertion that Kireev, upon her assessments of Minatee's proposed places of release, reached numerous *opinions* that these locales were unsuitable for the purposes of supervision Minatee required. See Docket Entry No. 1, at ¶ 26. As such, the Court will not oversee Defendant Kireev's discretionary decision and Minatee's claims against her are subject to dismissal without prejudice for failure to satisfy the tests posed in <u>Paine</u>. 595 F.2d at 201. To the extent that Minatee can allege additional facts to demonstrate the unconstitutional inclusion of false information on his file, upon which Defendant Kireev allegedly based her "constant" denials of suggested placement centers, Minatee may seek leave to file an amended pleading.

18

IV.     MINATEE'S SUBSEQUENT FILINGS

On July 1, 2011, Minatee filed a request for a preliminary injunction ("Request"), in which he asserts several additional facts. Docket Entry No. 3-2, at 2-4. However, he may not assert additional facts or claims by way of a request for a preliminary injunction. Even considering the additional facts, Minatee fails to state a claim for the reasons discussed above and does not make the showing required for a preliminary injunction.

A party seeking preliminary injunctive relief must demonstrate: 1) a reasonable probability of success on the merits; 2) that the movant will be irreparably injured by denial of the relief; 3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and 4) the public interest favors such relief. Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004). The injunction should only be issued where the movant produces sufficient evidence to demonstrate that all four factors favor preliminary relief. Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994). Notably, "[p]reliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." KOS Pharm., Inc. v. ANDRX Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citing Winback, 42 F.3d at 1427) (internal quotations omitted). Minatee fails to demonstrate that a preliminary injunction is warranted. At a minimum, in light of the fact that Minatee fails to state a claim under Rule 8(a), the first factor cannot be met.

In addition, Minatee's request references a state court proceeding before the Hon. Philip M. Freeman. From Minatee's submissions, it is unclear how that proceeding relates to the one before this Court. To the extent Plaintiff chooses to amend to attempt to cure the pleading deficiencies addressed herein, he should provide details about and explain the status of the state court

proceedings. See generally Rycoline Prods., Inc. v. C&W Unlimited, 109 F.3d 883 (3d Cir. 1997) (entire controversy doctrine "embodies the notion that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy").

## V. CONCLUSION

For the foregoing reasons, the Court will dismiss Minatee's claims against Defendants S.T.U., Maine, and Dow, with prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B), as amendment would be futile. Minatee's claims relating to events that transpired prior to September 10, 2008 will also be dismissed with prejudice as untimely, pursuant to 28 U.S.C. § 1915(e)(2)(B). Minatee's equal protection and due process claims against Defendant Kireev and Paolillo, to the extent the claims involve individual action, will be dismissed without prejudice with leave to amend. All remaining claims will be similarly dismissed for failure to state a claim upon which there is a plausible right to relief. In addition, the Court will deny Minatee's motion for preliminary injunctive relief given his failure to establish a reasonable probability of success on the merits and that a preliminary injunction is warranted. As such, the Court will also deny Minatee's motion for the appointment of pro bono counsel as moot.

An appropriate Order accompanies this Opinion.

Dated: 11/16/11

José L. Linares, U.S.D.J.